**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| DOC M. J.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | No. 25-CV-4021-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Doc M.J. seeks judicial review of the Commissioner of Social Security's denial of applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f). Plaintiff argues the decision issued by Administrative Law Judge (ALJ) Matthew Bring is not supported by substantial evidence and is contrary to the law and regulations. I recommend **affirming** the Commissioner's decision.

## *I. BACKGROUND*

This matter is before the court following two prior remands. Plaintiff applied for DI and SSI benefits on July 9, 2016, alleging he became disabled on October 15, 2014, due to Crohn's disease, generalized anxiety disorder, panic disorder, and irritable bowel syndrome. AR[2] 1572-74. Plaintiff appealed the Commissioner's initial denial of benefits,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] "AR" refers to the administrative record below (Doc. 7).

and this court granted an unopposed motion to remand the matter on January 15, 2020. AR 993-95. On remand, the Appeals Council directed the ALJ to remove and not consider evidence that didn't pertain to Plaintiff and to evaluate all evidence, including additional records from a psychiatric hospitalization. AR 998-99. Plaintiff filed subsequent claims for DI and SSI benefits on May 31, 2022, which were consolidated with the initial claims. AR 1611-12, 1635. Following subsequent administrative proceedings and another denial of claims, Plaintiff appealed and this court again granted an unresisted motion to remand on March 17, 2023. AR 1608-10. On May 8, 2023, the Appeals Council directed reassignment to a different ALJ to fully consider Plaintiff's skin disorder (including whether it meets or equals listing 8.04 or 8.08), evaluate medical opinions in determining Plaintiff's RFC, and obtain supplemental evidence from a vocational expert (VE). AR 1508, 1634-35.

The subsequent record from this second remand is now before the court. Plaintiff provided updated treatment notes, consultative examination, and medical source opinions. AR 2549-3766. The ALJ held a third administrative hearing on August 21, 2023, at which Plaintiff and a vocational expert (VE) testified. AR 1508, 1538-71. Plaintiff testified that the main reason he could not work was due to his unpredictable Crohn's disease, which worsened for various factors, caused significant pain (from six to nine on a ten-point pain scale), and resulted in him spending two to four hours a day in the bathroom. AR 1546, 1550, 1559; *see also* AR 1549 (testified he was in the bathroom "all day"). He felt this condition would prevent him working on a daily basis. AR 1550-51. He acknowledged his condition had been stable for some time with treatment (seeing a gastroenterologist at least once a year and taking medication) and had gotten "a small amount better." AR 1548, 1558. He clarified that he felt like the disease had not gotten better but he had gotten better at learning how to deal with it. AR 1558. Plaintiff also testified that anxiety and depression caused him to become easily overwhelmed and agitated. AR 1546-47, 1553-54, 1562; *see also* 1556. He would

overthink things and had difficulty being around other people. AR 1546-47, 1553-54, 1556 1556. Plaintiff testified he would need to be away from other people, like with prior delivery jobs where he mainly drove and listened to music and had limited interactions with people. AR 1562. He felt his conditions had worsened over the past three to five years. AR 1558. He estimated that more than once per month and for up to three days at a time, he would not be able to leave the house due to Crohn's disease or anxiety and depression. AR 1556-57. Plaintiff also testified that his skin issues caused two to five boils or abscesses per month, lasting one to two weeks at a time, on his hindquarters and elsewhere. AR 1551-52, 1560-61. These could cause issues for up to three months between the boils themselves and recovery from having them surgically drained. AR 1561. He indicated the medication he took for the skin issues seemed to help. AR 1552. Plaintiff also noted not having transportation would pose a difficulty with him applying for or working a job. AR 1563. The VE testified there were jobs Plaintiff could perform if restricted to light work, occasional exposure to extreme temperatures, performing simple and routine tasks, and only occasional interaction with coworkers and the public. AR 1567.

The ALJ issued a written decision on October 5, 2023, following the five-step process outlined in the regulations.[3] AR 1508-26. The ALJ found Plaintiff had severe impairments of hidradenitis suppurativa (a skin disorder), bipolar disorder, generalized anxiety disorder, and schizotypal personality disorder. AR 1511. The ALJ discussed Plaintiff's Crohn's disease and irritable bowel syndrome but found they were not severe.

---

[3] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." ***Grindley v. Kijakazi***, 9 F.4th 622, 628 (8th Cir. 2021) (quoting ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)**. The claimant bears the burden of persuasion to prove disability. ***Goff***, 421 F.3d at 790.

AR 1511-12. The ALJ found Plaintiff's severe conditions did not meet or equal any listing, including 8.04 or 8.06 (for Plaintiff's hidradenitis suppurativa and resulting skin lesions) and 12.03, 12.04, and 12.06 (for Plaintiff's mental impairments). AR 1513-14. The ALJ determined Plaintiff had the RFC[4] he asked the VE to consider (light work with only occasional exposure to extreme temperatures and limited to simple and routine tasks and occasional interaction with coworkers and the public). AR 1515. The ALJ concluded that Plaintiff could perform work as a housekeeping cleaner, routing clerk, and marker, and was thus, not disabled from October 15, 2014 (the alleged onset date), and October 5, 2023 (the date of the ALJ's decision). AR 1525-26.

The Appeals Council denied Plaintiff's request for review on March 3, 2025 (AR 1499-1504), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[5] Plaintiff filed a timely complaint in this court (Docs. 1, 4).[6] The case was stayed due to a lapse of funding and government shutdown (Doc. 18) and thereafter, briefing deadlines were extended at the parties' requests (Docs. 22, 24, 26, 29). The parties filed briefs (Docs. 15, 27, 30) and the Honorable Leonard T. Strand, District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## *II. DISCUSSION*

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support

---

[4] Residual functional capacity (RFC) means "the most that a claimant can do despite her limitations." ***Sloan v. Saul***, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 404.1545(a)(1)**).

[5] *See* **20 C.F.R. §§ 404.981, 416.1481**.

[6] *See* **20 C.F.R. § 422.210(c)**.

[7] ***Grindley***, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

Plaintiff raises three issues: (1) whether substantial evidence supports the ALJ's assessment of listings related to Plaintiff's skin issues, (2) the ALJ's evaluation of medical opinions, and (3) the ALJ's evaluation of non-medical evidence (statements from Plaintiff and his mother). I address these issues in the sections below. Plaintiff's briefing[11] also makes generalized assertions, including about the ALJ's determination that Plaintiff could perform light work and that the ALJ inserted his own medical opinions rather than relying on opinions and records from medical providers. Agreeing with these contentions would require the court to reweigh the evidence and reach a different conclusion than the ALJ. The deferential standard of review, noted above, prohibits the court from doing so.

### *A. Listings Related to Skin Conditions*

Plaintiff contends the ALJ should have found Plaintiff's conditions meet or equal a listing, specifically 8.09 (chronic skin lesions) and 12.06 (anxiety). A claimant bears the burden of showing an impairment meets or equals a listing.[12] "To prove that an impairment or combination of impairments equals a listing, a claimant 'must present

---

[8] ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007).

[9] ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994).

[10] ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

[11] Plaintiff's opening brief (Doc. 15) appears to be in draft form; it has notations to add citations (footnotes 4, 15, 33), includes highlighting (page 13), and spells Plaintiff's dermatologist's name two different ways (Daffer and Deffer, pages 28-29). Counsel should take care to submit coherent briefs that are in final form. Similarly, Plaintiff contends in the introduction of his brief that the ALJ did not follow a directive from the Appeals Council but does not further address this assertion. Accordingly, I find it has been waived as argued by the Commissioner.

[12] ***Banks v. Berryhill***, 713 F. App'x 528, 528 (8th Cir. 2018) (per curiam).

medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'"[13]

The Commissioner argues Plaintiff has waived his listing argument because he fails to explain how his conditions meet or equal the applicable listings. Doc. 27 at 15-16.[14] Plaintiff does not respond to this argument in his reply. Even if Plaintiff did not waive this argument, substantial evidence supports the ALJ's listing determination.

Plaintiff argues his severe skin condition (hidradenitis suppurativa) equals listing 8.09. He acknowledges this listing covers all skin conditions for cases pending on or after October 6, 2023—the day after the ALJ's decision in this case. This court should review the ALJ's decision, however, using the listings in effect at the time of the ALJ's decision.[15] The ALJ considered the listings in effect at the time of the decision—8.04 (chronic skin infections) and 8.06 (hidradenitis suppurativa), and found Plaintiff's impairments did not meet or equal either listing. The court will therefore review consideration of those listings.

To establish disability under these listings, Plaintiff must show "extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed" (listing 8.04)[16] or "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite

---

[13] *Id.* (quoting ***KKC ex rel. Stoner v. Colvin***, 818 F.3d 364, 370 (8th Cir. 2016)); *see also* **20 C.F.R. §§ 404.1526(a), 416.926(a)** (equivalence applies when an impairment is "at least equal in severity and duration to the criteria of any listed impairment").

[14] *See* ***Garden v. Cent. Neb. Hous. Corp.***, 719 F.3d 899, 905 n.2 (8th Cir. 2013); ***Aulston v. Astrue***, 277 F. App'x 663, 664-65 (8th Cir. 2008) (declining to consider argument not raised before the ALJ).

[15] *See* Revised Medical Criteria for Evaluating Digestive Disorders and Skin Disorders, **88 Fed. Reg. 37704**, 37704 n.8 (June 8, 2023).

[16] ***Henning v. Colvin***, 943 F. Supp. 2d 969, 996 (N.D. Iowa 2013) (quoting **20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.04**).

continuing treatment as prescribed" (listing 8.06).[17] Plaintiff takes issue with the ALJ's reliance on a single treatment note from Plaintiff's dermatologist showing Plaintiff was stable and had no active lesions. Plaintiff fails to recognize, however, that the ALJ cited to this treatment note as an example: "*For instance*, in September 2022, [Plaintiff]'s dermatology specialist noted that [Plaintiff] did not have any current active lesions." AR 1513 (emphasis added). The ALJ went on to explain that his decision was based on numerous treatment records from Plaintiff's dermatologist[18] that "often noted that this condition was stable with use of prescribed medications." *Id.* Treatment records (for multiple skin conditions between 2016 and April 2023) show that while Plaintiff's hidradenitis suppurativa caused skin lesions, they improved or were stable much of the time. *See* AR 2391-98 (new lesions in November 2015 and January 2016 but only one new lesion from January to August 2016); AR 2361-90 (new lesions in January and February 2017 that had "significant improvement" in February and subsequent months); AR 2320-34, 2239-41 (flare-up from late April to early July 2019 and improved in early August and October); *see also* AR 2311-12, 2315-16, 2659-61, 2678-80, 2707, 2715, 2724, 2728, 2736-37 (improved condition in 2020, 2022, and 2023). The records also reflect a significant decrease in Plaintiff's treatment for skin conditions over the years. AR 2297-98, 2706 (three visits in both 2015 and 2016, twenty visits in 2017, seven visits in 2019, two visits in 2020 and 2022, and one visit in 2021). Plaintiff fails to demonstrate how his hidradenitis suppurativa meets or equals listings 8.04 or 8.06.

---

[17] ***Webb v. Berryhill***, 294 F. Supp. 3d 824, 887 (D.S.D. 2018) (quoting **20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.06**).

[18] The ALJ referred to the records exhibited as 40F (AR 2098-2295) and 51F (AR 2632-94). AR 1513. The record contains duplicate treatment notes. *See* AR 2169, 2297-98, 2706; *see also* AR 1256-87, 2173-77, 2715-18, 2184-86, 2190-92, 2195-2203, 2207-09, 2265-83, 2302-05, 2311-12, 2315-23, 2327-35, 2339-41, 2351-2402, 2532-34, 2659-61, 2678-80, 2707-09, 2715-18, 2724-25, 2728-29, 2736-37.

Plaintiff also argues he should have been found disabled under listing 12.06 (anxiety-related disorders). To meet this listing, Plaintiff must show he had one extreme limitation or two marked limitations in the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself; or that he met paragraph C criteria of a serious and persistent condition with marginal adjustment.[19] The ALJ found Plaintiff's mental impairments caused only mild or moderate limitations and did not meet the paragraph C criteria, and thus, did not meet or equal the listing. AR 1513-14. Plaintiff's argument on this listing focuses on how the ALJ weighed medical opinions (addressed in the next section). The record supports the ALJ's conclusion that Plaintiff's condition did not meet or equal listing 12.06.

I recommend affirming the ALJ's decision on the applicable listings.

### *B. Medical Opinions*

Plaintiff challenges the ALJ's consideration of medical opinions. The record includes opinions from Plaintiff's primary care physician (Michael Harder, DO), chiropractor (Juan Munoz, DC), mental health providers (Albert Okine, PA-C; Flynn McCullough, DO; and Stephen Tjaden, LISW), a consultative examiner (Michael Baker, PhD), and state agency consultants. Dr. Harder treated Plaintiff over the course of the relevant period for annual exams, Crohn's disease, hypothyroidism, depression, attention deficit disorder, and vitamin and iron deficiencies. AR 1296-1300, 2597-2631 (duplicate records at 2099-2168, 2634-39). Dr. Harder provided treating-source statements in August 2020 (AR 1292) and in August 2023 (AR 2759-63, 2765). The August 2020

[19] **20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06**.

letter merely contains a conclusion that Plaintiff is disabled.[20] Dr. Harder's opinion from August 2023 addresses Plaintiff's functional abilities. Dr. Harder opined that Plaintiff could only sit and stand for 60 minutes at a time and could sit, stand, or walk for at least six hours per day. He also found Plaintiff would need seven to ten bathroom breaks in an eight-hour shift, that each break would last from five up to thirty minutes, and that he might not have advance notice of the need for a break. Dr. Harder concluded Plaintiff would miss an average of three days of work per month.

Dr. Munoz provided chiropractic care to Plaintiff from June 2016 through August 2023. AR 829-57, 1301-25, 2740-58. He provided a written opinion in August 2023 (AR 2766) that Plaintiff could stand and walk for no more than three hours during an eight-hour workday, would need to shift at will between sitting and standing, would have lifting limitations, and would miss more than three days of work per month. Dr. Munoz stated Plaintiff could not perform a full-time job (working eight hours per day, five days per week) on a regular and continuing basis.

PA Okine managed Plaintiff's mental health medications between 2015 and November 2022. AR 498-509, 858-80, 1462-98, 2424-2504, 2593-95. He generally saw Plaintiff every three months with some longer gaps (between four to nine months) between appointments. He continually prescribed Klonopin (clonazepam) for Plaintiff's anxiety and panic issues and had prescribed additional medications (buspirone and Seroquel) that were discontinued due to side effects. PA Okine issued written opinions addressing Plaintiff's functional abilities in July 2017 (AR 573-82) and July 2020 (AR 1288-91). In both opinions, PA Okine found Plaintiff had serious or marked limitations in maintaining attendance and punctuality, interacting with supervisors and coworkers,

[20] The letter states: "[Plaintiff] is a 28-year-old patient of mine who has numerous medical problems including pretty significant Crohn's disease in which he sees a specialist for. He also has other medical problems including hypothyroidism and anxiety. Due to his numerous medical problems work for him is difficult and he is not able to work on a regular schedule and may benefit from disability." AR 1292.

and handling normal stress, and that Plaintiff had an extreme limitation in traveling to unfamiliar places. PA Okine found Plaintiff was more limited in 2017 (unable to meet competitive standards) in the areas of working around others, completing a workday without interruptions, responding to workplace changes, and interacting with the public, than in 2020 (finding only marked limitations at that time). In both opinions, PA Okine believed Plaintiff would miss more than four days of work per month (checking the box for more than four days in the 2017 opinion and writing in five to ten days in the 2020 opinion). PA Okine otherwise found Plaintiff had no more than moderate limitations in the remaining functional areas.

Dr. McCullough took over Plaintiff's medication management from PA Okine in April 2023. AR 2561-91. Dr. McCullough issued a written statement on August 10, 2023 (AR 2695-2704) after seeing Plaintiff around every two weeks from April through August 2023. Dr. McCullough concluded Plaintiff had significant limitations. He noted Plaintiff used medication and received psychotherapy, and although he had less anxiety, his anxiousness and depression impaired his abilities on a day-to-day basis. Dr. McCullough found Plaintiff's anxiety and paranoia caused serious limitations or the inability to either meet competitive standards or function entirely in almost all areas of mental functioning. He opined that Plaintiff would miss four or more days of work per month. Dr. McCullough wrote that Plaintiff's issues "would interfere [with] most if not all relevant work activities," that he was "unable to consistently retain, apply, [and] review 1-3 step homework from therapy," and that "any workplace would have difficulty accommodating him." AR 2699-2700.

Plaintiff saw Therapist Tjaden every week to every few weeks from late August 2018 to mid-January 2019, following a court-ordered psychiatric hospitalization for assaulting his father and expressing suicidal and homicidal ideations (AR 1550-21). AR 1223-48. This therapy focused on improving Plaintiff's emotional regulation and responses and decreasing mental health symptoms. Therapist Tjaden wrote a letter dated

August 25, 2020, outlining Plaintiff's symptoms ("struggles daily with difficulty concentrating, muscle tension, irritability, difficulty falling and staying asleep, becoming easily fatigued"), noting that "his symptoms cause clinically significant distress in social occupational and other important areas of functioning," and concluding that Plaintiff "is unable to engage in work activity that produces gainful income." AR 1326.

Dr. Baker performed a consultative examination in March 2023. AR 2249-51. He noted Plaintiff was taking Klonopin, which "has helped him" (AR 2250), and that he had seen therapists in the past (including Therapist Tjaden) but was not currently in therapy. Dr. Baker found Plaintiff had good attention, concentration, and recall, demonstrated reasonable judgment, and would likely have "quite adequate" attention and concentration at work. Dr. Baker noted a depressed mood with congruent affect, consistent with Plaintiff's statements that he was depressed, anxious, and frustrated. Dr. Baker concluded that Plaintiff's "issues may very well affect his ability to interact appropriately with coworkers, supervisors, and the public." AR 2251. Dr. Baker did not provide any specific limitations and concluded that Plaintiff "is not likely to maintain a job very long, particularly due to the Crohn's disease that he reports is quite difficult." *Id.*

Plaintiff argues the ALJ failed to follow the applicable regulations in evaluating the medical opinion evidence. When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence."[21] The ALJ weighs the following factors in assessing medical opinions:

---

[21] **20 C.F.R. §§ 404.1527(b), 416.927(b)**. The Social Security Administration adopted new regulations for evaluating medical opinions that went into effect on March 27, 2017. *See* **Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844** (Jan. 18, 2017). Rather than stating that these rules applied to claims pending at enactment (its usual practice), the Social Security Administration issued two sets of new regulations, covering claims filed both before and after March 27, 2017, the former of which are substantively the same as the old regulations. *See, e.g.*, **20 C.F.R. §§ 404.1520c, 404.1527, 416.920c, 416.927**. Accordingly, and for ease, I cite to the new regulations in the 2018 Code of Federal Regulations.

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."[22]

The ALJ must give controlling weight to a treating-source opinion if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" but "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."[23] The ALJ must give good reasons for the weight given to a treating-source opinion.[24]

As a preliminary matter, the conclusory opinions in the August 2020 letters from Dr. Harder and Therapist Tjaden, and the portion of Dr. Munoz's opinion that Plaintiff is disabled merit no consideration.[25] As for the remaining opinions, the ALJ summarized Plaintiff's treatment records and provided a thorough explanation for his consideration of the various opinions. The ALJ recognized Dr. Harder and Dr. McCullough were

---

[22] ***Owen v. Astrue***, 551 F.3d 792, 800 (8th Cir. 2008) (quoting **20 C.F.R. §§ 404.1527(c), 416.927(c)**).

[23] ***Partee v. Astrue***, 638 F.3d 860, 864 (8th Cir. 2011) (quoting ***Medhaug v. Astrue***, 578 F.3d 805, 815 (8th Cir. 2009)); *see also* §§ **404.1527(c)(2), 416.927(c)(2)**.

[24] ***Reece v. Colvin***, 834 F.3d 904, 909 (8th Cir. 2016).

[25] *See* ***Wagner v. Astrue***, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ "need not adopt the opinion of a physician on the ultimate issue of" of whether claimant is disabled); *see also* **20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)** ("Opinions on some issues such as [opinions that a claimant is disabled], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability[;] . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Social Security Administration] will determine that [the claimant is] disabled.").

acceptable medical sources who treated Plaintiff during the relevant period. The ALJ found their opinions were not supported by their own observations and were not consistent with other medical evidence nor the conservative nature of Plaintiff's treatment. These were permissible reasons to give the treating-source opinions less weight.[26] The record supports the ALJ's findings of inconsistencies. Dr. Harder noted multiple times in his August 2023 opinion that he had not treated Plaintiff for Crohn's disease for some time and that he was unable to answer several questions about Plaintiff's treatment and symptoms (he also deferred to other providers about Plaintiff's emotional ability to tolerate stress). This undercuts his conclusions about Plaintiff needing restroom breaks and missing work. *See also* AR 2599-2600 (April 2023 records show Plaintiff reported feeling well with minor complaints and Dr. Harder observed normal mood and affect); AR 2738 (March 2023 record from gastroenterologist shows Plaintiff doing better with Crohn's disease). Dr. Harder also noted he had not tested Plaintiff's functional capacity and wrote that Plaintiff had no limitations with sitting, standing, walking, or lifting. Yet he opined that Plaintiff could only sit and stand for sixty minutes before needing to move and limited Plaintiff's ability to lift twenty pounds or more.[27]

As for Dr. McCullough, his opinion of marked to extreme limitations (including maintaining attention) conflicts with treatment notes showing Plaintiff had intact attention span and normal ability to concentrate and reports that Plaintiff's medication helped his

---

[26] ***See Martise v. Astrue***, 641 F.3d 909, 925 (8th Cir. 2011) (ALJ may give less weight to a treating physician's opinion when that opinion is inconsistent with the physician's treatment notes); ***Prosch v. Apfel***, 201 F.3d 1010, 1013-14 (8th Cir. 2000) (discussing consideration of treating-source opinions and finding they may be given less weight based on inconsistency with other evidence).

[27] In function reports, Plaintiff did not indicate he had issues with lifting, standing, walking, or sitting. *See* AR 343-50 (August 7, 2016: reported no issues), AR 1777 (March 13, 2014: did not indicate issues with sitting or standing other than checking boxes indicating condition affected ability to sit and stand due to back pain; did not check boxes indicating problems walking or lifting). Similar to his testimony at the administrative hearing, Plaintiff wrote in these reports about having interaction with others and needing to frequently use the bathroom.

anxiety and panic issues. *See* AR 2569, 2571, 2573, 2575; *but see* AR 2561, 2564-65, 2568 (noting problems maintaining attention and concentration and finding impaired abstract reasoning and concentration). Treatment records also contradict Dr. McCullough's opinion that Plaintiff has extreme limitations: PA Okine routinely found normal cognitive functioning and thought process during mental status examinations (AR 2425, 2428, 2431, 2435, 2439, 2443, 2447, 2454, 2458, 2462, 2466, 2469-70, 2473, 2477-78, 2481, 2485, 2489-90, 2493, 2496, 2499, 2502-03), and Dr. Baker found no issues with concentration, attention, or recall during consultative examination (AR 2550-51). Finally, Plaintiff's Crohn's disease and mental health conditions were treated with prescription medication, generally supporting the ALJ's reliance on the conservative nature of Plaintiff's treatment. The ALJ provided good reasons that are supported by the record for giving less weight to the opinions from Dr. Harder and Dr. McCullough.

The ALJ properly recognized that the remaining providers did not qualify as acceptable medical sources.[28] Accordingly, their opinions are not entitled to controlling weight;[29] the ALJ had greater latitude in considering these opinions and he only needed to generally explain the weight he gave them.[30] The ALJ found Dr. Munoz's opinion had limited persuasive value because it lacked support from his own treatment notes and those of Dr. Harder. The record supports this finding: initial intakes in 2016 and 2022 show Munoz expected Plaintiff would make a full recovery (AR 834, 2758) and the records overall note improvement with treatment, based on both Plaintiff's statements

---

[28] *See* **Social Security Ruling (SSR) 06-03p**, 71 Fed. Reg. 45593, 45594 (Aug. 9, 2006) (excluding physician assistants, chiropractors, and licensed social workers as acceptable medical sources); **20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1)** (defining "medical opinions" for claims filed before March 27, 2017, as "statements from acceptable medical sources"), **404.1502(a), 416.902(a)** (listing acceptable medical source for claims filed before and after March 27, 2017).

[29] *See supra* note 28.

[30] **20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2)**; *see also* ***Peterson v. Colvin***, No. C14-4110, 2016 WL 1611480, at *6 (N.D. Iowa Apr. 21, 2016).

and Dr. Munoz's examinations; Dr. Harder's records generally show normal examinations and lack of ongoing complaints by Plaintiff of neck or back pain.

As to Plaintiff's mental impairments, the ALJ gave the opinions of PA Okine and Therapist Tjaden little weight based on inconsistency with their own observations and treatment records, as well as observations from the consultative examiners (including Dr. Baker). The record generally supports this finding: PA Okine's records show normal cognitive functioning, thought content, and judgment during mental status examinations, and Dr. Baker's examination in March 2023 reflects Plaintiff had good attention, concentration, recall, and judgment (specifically noting Plaintiff's "attention and concentration are quite adequate" (AR 2551)). The ALJ also relied on the conservative nature of Plaintiff's treatment, consistent with the record (routine medication management and limited therapy). The ALJ also pointed out the vague nature of the opinions and that they relied on Plaintiff's subjective complaints: Therapist Tjaden failed to indicate precise limitations but instead listed Plaintiff's symptoms and concluded Plaintiff could not work because of those symptoms; Dr. Baker's opinion that Plaintiff could not maintain a job due to Crohn's disease (given minimal weight) was largely based on Plaintiff's subjective complaints. This was a proper basis because the ALJ properly discounted Plaintiff's subjective complaints (discussed in the next section).[31] Finally, the ALJ found Dr. Baker's opinion about Plaintiff's difficultly interacting with others to be "somewhat vague and thus difficult to assess." AR 1522. This is a fair assessment as Dr. Baker did not indicate what type of limitations Plaintiff would have in interacting with others. Regardless, the ALJ gave that portion of Dr. Baker's opinion some weight

[31] *See* ***Perrymore v. Colvin***, 607 F. App'x 614, 615 (8th Cir. 2015) (per curiam) (noting that a "consulting physician's opinion deserves no special weight, and is entitled to less weight when based largely on claimant's subjective complaints" (citing ***Kirby***, 500 F.3d at 709)); *see also* ***Vance v. Berryhill***, 860 F.3d 1114, 1121 (8th Cir. 2017) (allowing ALJ to give less weight to treating-source opinion that relies on claimant's subjective complaints the ALJ did not fully credit).

because it was consistent with other evidence in the record. Indeed, the ALJ ultimately included an RFC limitation to occasional interaction with coworkers and the public (consistent with Dr. Baker's opinion), as well as limiting Plaintiff to light work (in line with Dr. Harder's opinion that Plaintiff could perform a range from light to medium work).[32] The ALJ properly considered and weighed the medical opinions.

Plaintiff also argues the ALJ erred in considering GAF[33] scores in the record. The ALJ noted the general range of GAF scores contained in the record (which the parties agree indicate moderate symptoms), noted these "scores are neither standardized nor based on normative data and provide only a 'snapshot' about a person's functioning," and gave them some weight as they were supported by and consistent with other evidence. AR 1524. The ALJ could properly consider GAF scores to aid in determining Plaintiff's functioning.[34]

The remainder of Plaintiff's arguments, including that the ALJ gave too much weight to opinions from state agency consultants, are conclusory and would require reweighing of the evidence. The ALJ wrote a thorough, reasoned, and well-supported opinion, consistent with the applicable standards. I recommend affirming the ALJ's consideration of medical opinions.

### *C. Plaintiff's Subjective Complaints and Substantial Evidence*

In his final challenge, Plaintiff asserts that the ALJ erred in considering Plaintiff's subjective complaints and statements from his mother, and that substantial evidence does not support the ALJ's RFC determination. An ALJ considers various information in

---

[32] *See **Martise***, 641 F.3d at 926 (noting RFC that included limitations supported conclusion that the ALJ did not entirely discount opinions from a treating source).

[33] Global Assessment of Functioning.

[34] *See **Halverson v. Astrue***, 600 F.3d 922, 930-31 (8th Cir. 2010) (noting that while "the Commissioner has declined to endorse the GAF scale" in its programs, "the GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning").

determining the claimant's RFC and "the intensity, persistence, and limiting effects of [the claimant's] symptoms."[35] "[F]actors [that] guide the analysis of whether a claimant's subjective complaints are consistent with the medical evidence" include "'the claimant's daily activities,' 'the duration, frequency and intensity of the pain,' 'precipitating and aggravating factors,' 'dosage, effectiveness, and side effects of medication,' and 'functional restrictions.'"[36] The ALJ may rest his credibility finding on "objective medical evidence to the contrary,"[37] or "inconsistencies in the record as a whole."[38] Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly [discounts] a claimant's testimony and gives a good reason for doing so.'"[39]

Plaintiff contends the ALJ erred in considering his subjective complaints, specifically by not finding they established his Crohn's disease and irritable bowel syndrome were severe impairments.[40] In assessing the severity of Plaintiff's impairments at step two of the process, the ALJ noted Plaintiff had been diagnosed with these conditions and acknowledged Plaintiff's testimony that they caused him to be on and off the toilet two to four hours per day each day. AR 1511; *see also* AR 1515 (noting Plaintiff claimed his mental health and bowel issues caused this to occur more than once per month), 1546, 1550-51 (Plaintiff testified his Crohn's disease presented the biggest

---

[35] ***Lawrence v. Saul***, 970 F.3d 989, 995 (8th Cir. 2020).

[36] ***Id.*** at 995 (quoting ***Polaski v. Heckler***, 739 F.2d 1320, 1322 & n.6 (8th Cir. 1984) (recognizing that the Social Security Administration has changed the assessment of the "credibility" of a claimant's subjective complaints (which could suggest "an examination of a claimant's character") to "an examination of the level of consistency between subjective assertions and the balance of the record as a whole," which "largely changes terminology rather than the substantive analysis to be applied").

[37] ***Ramirez v. Barnhart***, 292 F.3d 576, 581 (8th Cir. 2002).

[38] ***Brockman v. Sullivan***, 987 F.2d 1344, 1346 (8th Cir. 1993).

[39] ***Schultz v. Astrue***, 479 F.3d 979, 983 (8th Cir. 2007) (quoting ***Hogan v. Apfel***, 239 F.3d 958, 962 (8th Cir. 2001)).

[40] In addition to testifying at the most recent hearing, Plaintiff provided function reports (AR 343-50, 1772-79).

obstacle to him working as it required him to spend a lot of time in the bathroom, was unpredictable, caused pain at times, worsened his mental condition, and would cause him to be unable to work "very probably every day"). Even though the ALJ did not find these conditions severe at step two, he still considered them in determining Plaintiff's RFC for steps four and five.[41] The ALJ specifically stated he did not find Plaintiff's statements consistent with the medical and other evidence (AR 1512, 1515) and explained why. The ALJ summarized treatment records, noted the conservative nature of Plaintiff's treatment for bowel issues (seeing a gastroenterologist once or twice per year), and pointed out that Plaintiff remained fairly stable with prescription medication. AR 1511-12; *see also* AR 1547-49 (Plaintiff's testimony acknowledged treatment notes do not reflect he told providers he spent significant amounts of time in the bathroom; confirmed he saw a gastroenterologist at least once per year and managed his bowel conditions with medication and diet; and though he had tried multiple medications in the past, he had been stable for some time on his current medication). The medical records in evidence show Plaintiff made no reports of having to spend significant amounts of time in the bathroom daily, and they otherwise support the ALJ's assessment. *See* AR 2299, 2306, 2309-10, 2313, 2336 (Plaintiff reported to gastroenterologist only occasional pain and loose stools and overall doing well). The ALJ specifically stated he did not fully rely on Plaintiff's subjective complaints and explained why. Accordingly, the court must defer to the ALJ's assessment.

The ALJ also considered information from Plaintiff's mother. AR 1525; *see also* AR 949-53 (testimony from prior administrative hearing); AR 1145-49 (text messages); AR 332-342, 1763-70 (third-party function reports). Plaintiff's mother, like Plaintiff, indicated he had issues interacting with others and that his Crohn's disease caused him to

---

[41] *See* ***Gross v. Colvin***, No. 14CV4, 2014 WL 7004494, at *4 (E.D. Ark. Dec. 11, 2014) (noting harmless error applies when ALJ considered impact of impairment found to be non-severe at step two in determining Plaintiff's RFC as part of steps four and five).

spend two to four hours per day in the bathroom. The ALJ found this information unpersuasive for the same reasons in evaluating Plaintiff's subjective complaints and gave it little weight. Plaintiff points out the ALJ noted that Plaintiff's mother was not an acceptable medical source, and her statements were lay opinions and not based on objective medical evidence. Even if this is an improper factor, the ALJ's reliance on inconsistencies with medical evidence is a sufficient basis for giving the statements from Plaintiff's mother little weight.[42]

Finally, Plaintiff asserts substantial evidence does not support the ALJ's conclusion, which relied on the VE's testimony that Plaintiff could perform jobs with the normal allowed number of breaks during a day and no more than one absence per month. Plaintiff misstates the record by arguing the VE testified and the ALJ found Plaintiff would only need one, five-minute restroom break per day. The VE's actual testimony, however, was that *in addition to three scheduled breaks*, employers would generally allow one *additional* five-minute restroom break on an ongoing basis. AR 1567. The VE also testified employers would generally allow one unscheduled or unexcused absence per month. Accordingly, the ALJ's opinion is not based on a finding that Plaintiff would only need one restroom break per day. Plaintiff's general challenge—that substantial evidence does not support the ALJ's rejection of opinions that Plaintiff would miss more than one day of work per month—has already been addressed.

> It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which would support a different

[42] *See **Jones v. Colvin***, No. C 14-3049, 2016 WL 915236, at *8 (N.D. Iowa Mar. 7, 2016) (when ALJ discounted third-party statement based on lack of medical training, any error was harmless when ALJ also found statement inconsistent with the medical evidence).

outcome. The test is whether there is substantial evidence, on the record as a whole, to support the ALJ's decision.[43]

I recommend finding the ALJ properly considered Plaintiff's subjective complaints and information from his mother, and that substantial evidence supports the ALJ's decision.

## *III. CONCLUSION*

I recommend **affirming** the decision of the Social Security Administration.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[44] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[45]

**DATED** October 30, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

[43] ***Gross***, 2014 WL 7004494, at *4 (concluding the ALJ's decision was "not based on legal error" and finding "ample evidence on the record as a whole" (following "review[] of the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence").

[44] **Fed. R. Civ. P. 72**.

[45] *See* ***United States v. Wise***, 588 F.3d 531, 537 n.5 (8th Cir. 2009).